Civil Action No.: 23-1083

ROGER LOEB, Individually and on behalf of all others similarly situated,

        Plaintiff,

    v.

REVENTICS, LLC,

        Defendant.

## CLASS ACTION COMPLAINT

Plaintiff Roger Loeb ("Loeb" or "Plaintiff") brings this complaint, by and through his attorneys and on behalf of all others similarly situated, against Defendant Reventics, LLC ("Reventics" or "Defendant"), to seek redress for Defendant's actions preceding, surrounding, and following a data vulnerability and breach incident, which exposed the sensitive, personal, and medical information of hundreds of thousands of Defendant's customers. Plaintiff alleges as follows upon personal knowledge as to himself and his own experiences, and as to all other matters, upon information and belief, including an investigation and research conducted by his attorneys.

## <ins>INTRODUCTION</ins>

1.    Defendant failed to adequately protect the confidential and sensitive personally identifying information ("PII") and protected health information ("PHI") belonging to Plaintiff and other similarly situated individuals whose medical care providers used Defendant's products

and services and whose PII and PHI was improperly accessed in a cyber-attack (collectively, "Class Members" or the "Class").

2. PII and PHI includes, but is not limited to: full names, addresses, dates of birth, Social Security numbers, medical record numbers, patient account numbers, driver's license and other government issued ID numbers, healthcare providers' names and addresses, health plan names and IDs, and clinical data including diagnosis information, dates of service, treatment costs, prescription medications, the numeric codes used to identify services from healthcare providers, and descriptions of these codes.

3. This class action is brought on behalf of Class Members whose PII and PHI was improperly accessed in a cyber-attack during which cybercriminals accessed Class Members' PII and PHI through Defendant's computer systems (the "Data Breach").

4. Defendant's failure to adequately implement and maintain data security practices and measures for stored PII and PHI directly and proximately caused injuries to Plaintiff and the Class.

5. Defendant failed to take adequate and reasonable steps to employ sufficient security measures to protect sensitive PII and PHI, even in the face of well-publicized data breaches at numerous other businesses, financial institutions, web platforms, and healthcare institutions in previous months and years.

6. Despite numerous and highly publicized data breaches, Defendant failed to implement necessary and basic security measures to prevent the unauthorized access to this information, which was entrusted to Defendant for safekeeping by Plaintiff and the Class by way of their medical service providers.

7.     Nationwide Class Members, by way of their medical providers who use Reventics, have suffered real and imminent harm as a direct result of Defendant's conduct, including: (a) refusing to take adequate and reasonable measures to ensure its data systems, as well as the data stored therein, were protected from unauthorized third parties; (b) refusing to take appropriate steps to prevent the breach from occurring; (c) failing to disclose to and properly inform its customers of the material facts that it did not have adequate computer systems and security practices to safeguard PII and PHI; and (d) failing to provide timely and proper notice of the Data Breach to Plaintiff and the Class.

8.     The Data Breach was the foreseeable and inevitable result of Defendant's inadequate data security measures and policies regarding data security. Despite well-known and highly publicized threats of security and data breaches, and despite the fact that data breaches were and are taking place across numerous industries, Defendant failed to ensure that it maintained adequate data security leaving the PII and PHI of Plaintiff and the Class subject to theft.

9.     As a direct and proximate result of Defendant's negligence, an enormous amount of PII and PHI belonging to Class Members was taken from Defendant's platform. Upon information and belief, the Data Breach compromised the PII and PHI of approximately 250,000 individuals—if not more. Victims of the Data Breach have had their privacy rights violated, have been exposed to increased risks of fraud and identity theft, have lost control over their personal and medical information, and have otherwise been injured by Defendant's conduct.

10.     Plaintiff brings this class action lawsuit on behalf of all those similarly situated to address Defendant's inadequate conduct in the safeguarding of Class Members' PII and PHI that Defendant collected and improperly maintained, and for failing to provide timely and adequate

notice to Plaintiff and other Class Members that their PII and PHI had been accessed without authorization by an unknown third party.

11.    Plaintiff, on behalf of himself and the Class, seeks: (a) actual damages, economic damages, statutory damages, and/or nominal damages; (b) punitive damages; (c) injunctive relief; and (d) fees and costs of litigation.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

13.    This Court has personal jurisdiction over Defendant because Defendant's negligent acts or omissions, false and misleading representations, and violations of consumer protection statutes regarding the security of Plaintiff's and the Class Members' PII and PHI alleged herein occurred in this State. Defendant's principal place of business is also located in this State.

14.    Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because the injury in this case substantially occurred in this District and Defendant resides in this District.

## PARTIES

15.    Plaintiff Roger Loeb is and was at all times relevant to this Complaint a citizen of the State of Colorado. On March 2, 2023, Loeb was informed by Defendant that its computer systems had been breached and his PII and PHI may have been accessed by a third party.

16.    Defendant Reventics, LLC is a for-profit corporation organized under the laws of the State of Delaware with its principal place of business in Greenwood Village, Colorado.

## FACTUAL ALLEGATIONS

17.     Defendant Reventics is a "clinical documentation improvement (CDI) and revenue cycle management (RCM) company" doing business throughout the United States.[1] Reventics works with medical providers, including Plaintiff's, to help manage their clinical documentation[2] and billing, claims, and revenue management processes[3] through the use of specialized software and computer systems provided and managed by Reventics. Reventics describes its services to include coordination between doctors and their billers, as well as assistance in patient chart review for "coding, billing, and documentation" using "clinical machine learning."[4]

18.     Nowhere on Defendant's website is there information regarding how many doctors, medical practices, physician groups, hospitals, or other entities use Defendant's products.

19.     During the regular course of business between Defendant and its customers, medical providers supply Defendant with patient PII and PHI, such as:

    a.  Contact and account information, such as names, usernames, passwords, addresses, telephone numbers, email addresses, and household members;

    b.  Authentication and security information such as government identification, Social Security numbers, security codes, and signatures;

    c.  Demographic information, such as age, gender, and date of birth;

    d.  Payment information, such as credit card, debit card, and/or bank account numbers; and

---

[1] https://reventics.com/about (last accessed Apr. 27, 2023).
[2] https://reventics.com/products/revcdi (last accessed Apr. 27, 2023).
[3] https://reventics.com/products/revmax (last accessed Apr. 27, 2023).
[4] https://reventics.com/why-reventics (last accessed Apr. 27, 2023).

e.  Medical history as self-reported by customers, or medical history as transmitted from other healthcare providers.

20.     Beginning in or around late February or early March 2023, Defendant sent notices to Class Members informing them of the Data Breach, describing "a data security incident that may have exposed some of your personal information that we have in our possession because of clinical documentation and reimbursement services we provide to a healthcare provider or providers where you have received care."

21.     The notice specified that "[o]n or about December 15, 2022, Reventics, LLC [], a revenue cycle management company that partners with healthcare providers, detected certain irregularities in its systems, including a cyber-intruder who encrypted and potentially accessed information on Reventics' servers."

22.     Reventics also disclosed that "[o]n or about December 27, 2022, it was determined that unauthorized acquisition of information had occurred." Defendant further informed Class Members that "[c]ertain personally identifiable information ('PII') and Protected Health Information ('PHI') protected under HIPAA and state privacy laws was contained on Reventics' systems and was impacted by the breach."

23.     According to the notice, the compromised PII and PHI included the following information belonging to Plaintiff and other Class Members:

> [F]irst, middle, and last name, address, date of birth, medical record number, patient account number, driver's license and other government issued ID, healthcare provider's name and address, health plan name and health plan ID, clinical data including diagnosis information, dates of services, treatment costs, prescription medications, the numeric codes used to identify services and procedures you received from your healthcare provider, and a brief description of these codes.

24.     On February 19, 2023, prior to Reventics notifying Class Members directly, the website *DataBreaches.net* broke the first news of the Data Breach, reporting the following: "On February 13, 2023, the Royal ransomware group added Reventics to their dark web leak site, leaking more than 16 GB of files. Royal claims those files are only 10% of what they exfiltrated."[5] The fact that at least 10% of the compromised information had already been released on the dark web shows that Plaintiff and the Class Members are suffering actual harm through the unauthorized theft and public dissemination of their PII and PHI.

25.     Furthermore, in an update apparently published on or around February 23, 2023,[6] *DataBreaches.net* reported the discovery of an additional Data Breach notification hosted on Reventics's website that disclosed additional categories of information to those disclosed in other publicly available copies of the notice, most notably including Class Members' Social Security numbers and financial information. That version of the notice stated the following in pertinent part:

> On December 27, 2022, the cybersecurity and forensic consulting firm confirmed that the cyber-intruder accessed and exfiltrated certain personally identifiable information ("PII") and Protected Health Information ("PHI") protected under HIPAA and state privacy laws. This information included first and last name, date of birth, ***social security number***, ***financial information***, healthcare provider's name and address, health plan name, clinical data, the numeric codes used to

---

[5] https://www.databreaches.net/reventics-notifying-patients-of-ransomware-incident/ (last accessed Apr. 27, 2023).

[6] *See id*.: "DataBreaches also notes that the notice on Reventics' website mentions more data elements that may have been involved than its February notice to Montana, and makes no mention of any ransomware or data leak. The data elements mentioned in their website notice are: first and last name, date of birth, Social Security number, financial information, healthcare provider's name and address, health plan name, clinical data, numeric codes used to identify services and procedures, and brief descriptions of the codes.").

identify services and procedures patients received from healthcare providers, and a brief description of these codes.[7]

(Emphasis added.)

26. Despite Reventics claiming that it initially discovered the Data Breach on or around December 15, 2022, and discovered the theft of PII and PHI on or around December 27, 2022, Defendant failed to notify Plaintiff and other Class Members until approximately March 1, 2023. As a result, Plaintiff's and Class Members' PII and PHI was in the possession of a criminal ransomware gang and available publicly on the dark web for more than **two months** prior to Defendant's notification.

27. Defendant's notice also informed Class Members of the following:

Reventics immediately took action to secure the affected systems and contain the incident. Reventics then notified other stakeholders, and, as noted above, retained a leading third-party cybersecurity and forensic consultant to investigate the nature and scope of the incident and secure the data environments. Additionally, Reventics engaged an international law firm to assist with notifying law enforcement, preparing regulatory notices, and notifying those who may have been impacted by this incident.

28. Defendant offered only minimal assistance to Class Members in the form of one year of identity theft protection services through IDX, a data breach and recovery services company, with up to $1,000,000 of insurance reimbursement.

29. This attempt to remedy Class Members' harms is inadequate to Plaintiff and other Class Members who are now potentially vulnerable to years of heightened risk from the theft of their PII or PHI and who may have already suffered substantial out-of-pocket costs in responding to the Data Breach.

---

[7] https://reventics.com/images/email-images/notice-of-data-security-incident.png (last accessed Apr. 27, 2023).

30.     Defendant's Privacy Policy states the following: "Reventics, Inc. [] respects your privacy and is committed to protecting it through its compliance with this policy."[8] Concerning data security, the Privacy Policy goes on to state the following: "We have implemented measures designed to secure your personal information from accidental loss and from unauthorized access, use, alteration, and disclosure."

31.     Notably, Defendant's website seems to have no HIPAA privacy policy, despite the fact that it routinely handles PHI. The Privacy Policy refers almost entirely to customers of the Reventics platforms and users of the website, ignoring that the basis of Defendant's business model involves the storing and transmitting of Plaintiff's and other Class Members' PII and PHI.

32.     Plaintiff and the Class Members did not consent to having their PII and PHI disclosed as part of the Data Breach.

33.     Defendant was obligated by industry standards, common law, and public representations made to Plaintiff and the Class Members to keep their PII and PHI confidential and to protect it from unauthorized access and disclosure.

34.     Defendant's data security obligations were particularly significant given the current climate of increased cyber attacks and data breaches, including ransomware attacks, in the healthcare industry prior to the Reventics Data Breach.

35.     Recently, similar data breaches have become so prevalent that the U.S. Federal Bureau of Investigation ("FBI") and U.S. Secret Service have issued a warning to potential targets so they are aware of, and prepared for, a potential attack. The likelihood of potential future attacks

_____

[8] https://reventics.com/privacy (last accessed Apr. 27, 2023).

was, therefore, widely known and foreseeable to the public and to companies who work in the data industry, such as Defendant.

36. The U.S. Federal Trade Commission ("FTC") reported that identity theft is a pervasive issue across the country and impacts millions of people each year, with out-of-pocket losses in the billions of dollars.[9] Identity thieves use stolen PII for numerous types of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[10]

37. Cybercriminals took the PII and PHI of Plaintiff and the Class Members to conduct identity theft or to sell it to other criminals who will then purchase such information and use it for that purpose. The fraudulent activity resulting from the Data Breach may not surface for years to come as the information remains available for sale.

38. Defendant knew, or reasonably should have known, of the significance and necessity of safeguarding the PII and PHI of Plaintiff and the Class Members, including the sensitive information improperly accessed in the Data Breach, as well as the foreseeable consequences that would occur if Defendant's data security systems were breached, including the costs that Plaintiff and Class Members would incur as a result.

---

[9] https://www.ftc.gov/news-events/news/press-releases/2008/12/ftc-issues-report-social-security-numbers-identity-theft (last accessed Apr. 18, 2023).
[10] The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR § 603.2. The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number." *Id*.

39. Plaintiff and the Class Members face potentially years of constant monitoring of their financial and personal records. Plaintiff and the Class Members are suffering from and will continue to suffer from such damages in addition to any fraudulent use of their PII or PHI.

40. Plaintiff and the Class Members were injured as a direct and proximate result of Defendant's failure to implement or maintain adequate data security measures to protect the PII and PHI belonging to Plaintiff and the Class Members.

41. The FTC has released guidance for businesses highlighting the necessity of implementing adequate data security practices. The FTC encourages data security to be included in all business decision-making.

42. For example, in October 2016, the FTC published a document titled "Protecting Personal Information: A Guide for Business" in which the agency described numerous ways that businesses should address risks related to cybersecurity.[11] The publication notes that businesses should safeguard the customer PII they hold, properly dispose of the PII when it is no longer needed, encrypt information that is stored on networks and servers, understand the vulnerabilities of their own systems, and implement policies and practices to correct any security problems. The publication also recommends businesses use a breach detection system to expose intrusions on the systems as soon as they occur, monitor all incoming traffic for activity indicating a hack is coming, watch for large amounts of data being transmitted from the system, and have a response plan prepared in the event of a breach.

---

[11] https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last accessed Apr. 27, 2023).

43.     The FTC additionally recommends that businesses not maintain PII (or PHI) for more time than is necessary for an authorization of a transaction, limit access to sensitive PII, require unique passwords to be used, use industry-tested methods for security, monitor for suspicious activity on the network, and verify that third-party service providers implement adequate security measures as well.

44.     The FTC has brought enforcement actions under Section 5 of the Federal Trade Commission Act ("FTCA") against businesses for failing to safeguard user data effectively and reasonably as an unfair act or practice prohibited under the law. 15 U.S.C. § 45. These actions result in clarified measures businesses must take in order to meet their data security obligations.

45.     Defendant failed to adequately implement proper data security practices, and its failure to implement such appropriate and reasonable measures to protect against unauthorized third-party access to Class Members' PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

46.     Numerous industry and national best practice standards have been published and widely disseminated. Defendant should have used these as go-to resources and authoritative guides when developing its cybersecurity practices.

47.     Best practices for cybersecurity include installing appropriate malware detection software, monitoring and limiting network ports, protecting internet browsers and email management systems, setting up network systems such as firewalls, switches and routers, monitoring and protecting physical security systems, protecting against possible communication systems, and training staff on critical points.

48. Cybercriminals are more likely to target businesses that store sensitive PII and PHI than other businesses. Credit card information and bank account numbers are desirable to hackers and tempting targets, although not as attractive as information such as dates of birth and Social Security numbers, which cannot be easily destroyed and replaced in the event of fraud.

49. PII and PHI is highly valuable to cybercriminals. This can be seen in the high prices they are willing to pay for it on the dark web. According to study by NordVPN, U.S. credit card data can be purchased for an average price of $6, but bank account login information has an average selling price of approximately $90.[12]

50. Because Social Security numbers may be used for a variety of fraudulent purposes, they are among the worst kind of PII to have stolen. The U.S. Social Security Administration ("SSA") emphasizes that the loss of a person's Social Security number can result in identity theft and substantial financial fraud:

> A dishonest person who has your Social Security number can use it to get other personal information about you. Identity thieves can use your number and your good credit to apply for more credit in your name. Then, they use the credit cards and don't pay the bills, it damages your credit. You may not find out that someone is using your number until you're turned down for credit, or you begin to get calls from unknown creditors demanding payment for items you never bought. Someone illegally using your Social Security number and assuming your identity can cause a lot of problems.[13]

51. Furthermore, changing a stolen Social Security number is a labor-intensive process. A person cannot obtain a replaced Social Security number without extensive paperwork and evidence of actual misuse of their original number. This means that a person cannot even obtain a

---

[12] https://www.tomsguide.com/news/hackers-have-earned-millions-selling-your-data-on-the-dark-web-how-to-stay-safe (last accessed Apr. 18, 2023).
[13] https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Apr. 27, 2023).

new Social Security number without incurring actual, ongoing fraud first that can be evidenced to the SSA. Preventative action to defend against this once a Social Security number is accessed by an unauthorized party is not permitted.

52.     Even if an individual is able to secure a new Social Security number, it may not be effective. Banks and credit bureaus have the ability to link new Social Security numbers to the old one very quickly, resulting in any old, bad information being inherited by the new number and negating the replacement altogether.[14]

53.     The SSA additionally offers warnings that the replacement Social Security number is not a fix-all solution:

> Keep in mind that a new number probably will not solve all your problems. This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number. Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

> If you receive a new Social Security number, you should not be able to use the old number anymore.

> For some victims of identity theft, a new number actually creates new problems. If the old credit information is not associated with your new number, the absence of any credit history under the new number may make it more difficult for you to get credit.[15]

54.     In Plaintiff and the Class Members' cases, the breach left the cybercriminals with the items necessary to complete the most thorough and devastating identity theft. Every piece of

---

[14] Bryan Naylor, *Victims of Social Security Number Theft Find It's Hard to Bounce Back*, NPR (Feb. 9, 2015), http://www.npr.org/2015/02/09/384875839/data-stolen-by-anthem-s-hackers-has-millionsworrying-about-identity-theft, last accessed Apr. 18, 2023.

[15] https://www.ssa.gov/pubs/EN-05-10064.pdf (last accessed Apr. 27, 2023).

essential PII and PHI needed to recreate Plaintiff and the Class Members' identities are now in the hands of cyberintruders and the highest bidders on the dark web. Because more than just piecemeal bits of data were taken, the items accessed in the Data Breach create a one-stop shop for identity thieves.

55.     Public policy supports an aggressive approach to data security. Someone whose PII or PHI has been fraudulently accessed may not see any indications of identity theft for months or even years. According to the U.S. Government Accountability Office ("GAO") Report to Congressional Requesters:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[16]

56.     Businesses that work with sensitive information recognize that PII and PHI is a valuable commodity for which there exists an online black market. Stolen PII and PHI of Plaintiff and Class Members contains a high value for both legitimate businesses and black market criminals.

57.     Varying types of fraud may be committed with misappropriated PII and PHI, including, but not limited to, immigration fraud, obtaining a fraudulent driver's license or identification card, fraudulent tax refunds, and fraudulent unemployment benefits. Privacy experts and the United States government alike warn that identity theft may not be identified and brought to light for years after a data breach initially occurs.

---

[16] https://www.gao.gov/assets/gao-07-737.pdf (last accessed Apr. 27, 2023).

58.     As discussed above, the exposure of particular PII, especially Social Security numbers, poses a considerable risk. Identity thieves can use Social Security numbers to create fraudulent bank accounts or file fraudulent tax returns. Class members whose Social Security numbers may have been exposed face a real, imminent, and substantial risk of identity theft and other issues associated with the vulnerability of their Social Security numbers. They will need to monitor and continue to monitor their credit and tax filings for an unknown and possibly indefinite period of time.

59.     Based on the foregoing information, the data compromised in the Data Breach is significantly more valuable than the loss consumers often experience in a breach of credit card information from a retail store or a breach exposing usernames and passwords from online accounts. The data compromised by Defendant is impossible to safeguard once exposed, and in many scenarios, extremely laborious, if not impossible, to ever change, such as Social Security numbers, driver's license numbers or government-issued ID numbers, names, and dates of birth.

60.     This sensitive data commands a high price on the dark web. PII, specifically Social Security numbers, are ten times more valuable on the black market than other information like credit card information,[17] which can be changed quickly.

61.     In addition to financial fraud, identity thieves have the ability to obtain driver's licenses, apply for government benefits, seek medical services, apply for housing, or even give false information to police. Victims of these crimes may not be aware that their driver's licenses

---

[17] Tim Greene, *Anthem Hack: Personal Data Stolen Sells for 10x Price of Stolen Credit Card Numbers*, IT World, (Feb. 6, 2015), https://www.networkworld.com/article/2880366/anthem-hack-personal-data-stolen-  sells-for-10x-price-of-stolen-credit-card-numbers.html (last accessed Apr. 18, 2023).

were used to apply for unemployment benefits until they are notified by law enforcement that fraud has been suspected or until they apply for their own valid unemployment benefits and are denied based on a prior award granted to the fraudulent applicant.

## PLAINTIFF'S INJURIES

62.     On March 2, 2023, Plaintiff Roger Loeb received notification via letter from Defendant dated March 1, 2023 that Plaintiff's PII and PHI had been accessed as part of the Data Breach.

63.     Upon receipt of the notice, Plaintiff reached out to the Colorado Attorney General, who responded to his concerns with only general information on how to protect oneself against identity fraud.

64.     The same day, Plaintiff also contacted Reventics to request detailed information regarding which information of his was exposed in the Data Breach.

65.     On April 18, 2023, Plaintiff received a response from Defendant informing him that his "internal patient account number, mailing address, certain dates of service, provider name and treatment location, and symptom and diagnosis information" were all accessed without authorization in the Data Breach.

66.     Defendant also informed Plaintiff that "Neuro Surgery One" was the medical provider associated with Plaintiff which used Reventics' products and services and ultimately provided Plaintiff's data to Defendant.

## CLASS ALLEGATIONS

67.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and the Class defined as follows:

**All persons within the United States whose PHI or PII was exposed to unauthorized third parties as a result of the data breach discovered by Defendant on December 15, 2022 (the "Nationwide Class").**

68.     The following people are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interests and its current or former employees, officers, and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

69.     **Numerosity**: The exact number of Class Members is unknown to Plaintiff at this time, but individual joinder is impracticable. Reventics reported 250,918 customers were affected by the Data Breach.

70.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and Class Members sustained damages arising out of the same action or inaction of Defendant relating to its failure to adequately protect, oversee, monitor, and safeguard Plaintiff's and the Class Members' PII and PHI.

71.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff's claims are made in a representative capacity on behalf of the other members of the Class. Plaintiff has no interests antagonistic to the interests of the other members of the Class and is subject to no unique defenses. Plaintiff has retained competent counsel to prosecute the case on behalf of Plaintiff and the Class.

Plaintiff and Plaintiff's counsel are committed to vigorously prosecuting this action on behalf of the members of the Class and have the financial resources to do so.

72.     **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward Class Members and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's practices challenged herein apply to and affect all Class Members uniformly, and Plaintiff's challenge to those practices hinge on Defendant's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

73.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and Class Members, and those questions predominate over any questions that may affect individual Class Members. Common questions for the Class include, not are not necessarily limited to the following:

   a.   Whether Defendant failed to maintain adequate security procedures;

   b.   Whether Defendant's conduct constitutes negligence;

   c.   Whether Defendant's conduct violated the Colorado Consumer Protection Act, Col. Rev. Stat. § 6-1-101, *et seq.*

   d.   Whether Plaintiff and Class Members are entitled to restitution on the basis of unjust enrichment; and

   e.   Whether Plaintiff and Class Members are entitled to damages and injunctive relief.

74.     **Superiority**: This case is appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of

this controversy. Joinder of all parties is impracticable. The damages suffered by the individual members of the Class will likely be relatively small in comparison to the burden and expense of individual prosecutions of litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Class to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties and the court systems of many states and federal districts. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of sale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered, and uniformity of decisions ensured.

## CAUSES OF ACTION

### COUNT I
**Negligence**
**(By Plaintiff Individually and on Behalf of the Nationwide Class)**

75.     Plaintiff incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

76.     Defendant owed a duty to Plaintiff and Class Members to properly notify them that their PII and PHI had been disclosed to and accessed by unauthorized third-party cybercriminals.

77.     Defendant owed a duty to Plaintiff and the Class to properly train, vet, and oversee employees and vendors who maintain, access, store, and manage Plaintiff's and Class Members' PII and PHI and to implement and maintain reasonable data security practices to protect the Customer Information from foreseeable cyberattacks and unauthorized access.

78.     Defendant breached these duties and the applicable standards of care by:

a. Failing to conduct proper and reasonable training and due diligence over vendors and employees and data security systems, practices, and procedures;

b. Failing to conduct proper and reasonable due diligence over the employees, vendors, or contractors that were the vector(s) storing Plaintiff's and the Class's PII and PHI;

c. Failing to maintain reasonable and appropriate oversight and audits on its internal data security and its employees, vendors, or contractors that were the vectors of the cybercriminals' infiltration into the system(s) storing Plaintiff's and the Class's PII and PHI;

d. Failing to adequately separate and isolate PII and PHI from publicly accessible or publicly adjacent environments in their systems;

e. Failing to implement and maintain reasonable safeguards and procedures to prevent the unauthorized disclosure of Plaintiff's and the Class's PII and PHI;

f. Failing to monitor and detect its confidential and sensitive data environment(s) storing Plaintiff's and the Class's PII and PHI reasonably and appropriately in order to prevent or limit the Data Breach;

g. Failing to implement and maintain reasonable data storage and retention procedures with respect to the PII and PHI to ensure it was being stored and maintained for legitimate and useful purposes;

h. Failing to undertake reasonable and sufficient incident response measures to ensure that the cyberattack directed toward Defendant's sensitive business information

would not expose and cause disclosure and unauthorized acquisition of Plaintiff's and the Class's PII and PHI;

i. Failing to ensure that any and all unauthorized copies of accessed data, including Plaintiff's and the Class's PII and PHI was deleted, destroyed, rendered unable to be used, or returned to Plaintiff and the Class Members;

j. Failing to reasonably conduct forensic investigation into the scope, nature, and exposure of the Data Breach or to ascertain its full severity;

k. Failing to provide full disclosure, deceptively misleading Class Members through false representations and misleading omissions of fact regarding the Data Breach, Class Members' risk and exposure caused by the Data Breach, and the adequacy of the investigation of and response to the Data Breach; and

l. Failing to provide accurate, complete, and sufficiently detailed notification to Plaintiff and the Class Members regarding the circumstances and extent of the Data Breach, its causes, its effects, the extent of the exposure of their PII and PHI, and details regarding the disposition of Plaintiff's and Class members' PII and PHI at all times during the Data Breach.

79. Defendant is both the actual and legal cause of Plaintiff's and the Class Members' harms and injuries. Had Defendant implemented and maintained adequate data security measures and provided timely notification of the Data Breach and specifically what types of data were compromised to affected victims, including Plaintiff and Class Members, Plaintiff and Class Members would not have been damaged or would have been damaged to a lesser degree than they actually were.

80. Plaintiff and the Class Members have suffered damages as a result of Defendant's negligence. Plaintiff and Class Members have suffered actual and concrete injuries and will continue to suffer additional injuries into the future, including economic and non-economic damages in the following forms: (a) invasion of privacy; (b) financial costs incurred mitigating the imminent risk of identity theft; (c) loss of time and loss of productivity incurred mitigating the imminent risk of identity theft; (d) loss of time and loss of productivity heeding Defendant's warnings and following its instructions in the notices; (e) financial costs incurred due to actual identity theft; (f) the cost of future identity theft monitoring; (g) loss of time incurred due to actual identity theft; (h) loss of the benefit of the bargained for data security practices that were not provided as represented; and (i) and diminution of value of their PII and PHI.

## COUNT II
**Violation of the Colorado Consumer Protection Act**
**(Colo. Rev. Stat. § 6-1-101, *et seq*.)**
**(By Plaintiff Individually and on Behalf of the Nationwide Class)**

81. Plaintiff incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

82. Plaintiff brings this claim individually and on behalf of the Nationwide Class against Defendant.

83. Defendant is a "person" under § 6-1-102(6) of the Colorado Consumer Protection Act ("Colorado CPA"), Colo. Rev. Stat. § 6-1-101, *et seq*.

84. Plaintiff and the Nationwide Class are "consumers" for purposes of Colo. Rev. Stat. § 6-1-113(1)(a) who were victims affected by the Data Breach when their PII and PHI was unlawfully accessed.

85.     The Colorado CPA prohibits deceptive trade practices in the course of a person's business. Defendant engaged in deceptive trade practices prohibited by the Colorado CPA, including: (1) knowingly making a false representation as to the characteristics, uses, and benefits of the Reventics system and data security practices that had the capacity or tendency to deceive medical providers who use Defendant's products; (2) representing that Defendant's systems and data security practices are of a particular standard, quality, and grade even though Defendant knew or should have known that they are not; (3) advertising the Reventics products with the intent to sell and provide them not as advertised; and (4) failing to disclose material information concerning the inadequate data security practices that was known to Defendant at the time of the advertisement or sale with the intent to induce medical providers and hospitals to purchase or retain Defendant's products.

86.     In the course of its business, Defendant concealed and suppressed material facts concerning its products' data security and the Data Breach. Defendant misrepresented that Reventics's system could securely maintain PII and PHI provided to it by medical providers and otherwise engaged in activities with a tendency or capacity to deceive. Defendant also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of Defendant's products and services.

87.     Defendant's actions set forth above occurred in the conduct of trade or commerce.

88. Defendant knew about the inadequate data security practices at the time of sale of its products and services and continued to conceal this knowledge throughout the period of the Data Breach until its disclosure more than two months later on or around March 1, 2023.

89. Defendant intentionally and knowingly misrepresented material facts regarding the data security practices and Data Breach with the intent to mislead Plaintiff and the Nationwide Class.

90. Defendant knew or should have known that its conduct violated the Colorado CPA.

91. Defendant owed Plaintiff and the Nationwide Class a duty to disclose the true nature of the inadequate data security practices and the Data Breach because Defendant: (a) possessed exclusive knowledge about the Data Breach; (b) intentionally concealed the foregoing from Plaintiff and the Nationwide Class; and (c) made incomplete representations about the Data Breach, while purposefully withholding material facts from Plaintiff and the Nationwide Class that contradicted these representations.

92. Defendant's representations and omissions were material because they were likely to deceive reasonable Class Members.

93. Defendant's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable Class Members, including Plaintiff and the Nationwide Class about the true nature of the Data Breach and the value of Reventics's services.

94. Plaintiff and the Nationwide Class suffered ascertainable loss and actual damages as a direct and proximate result of Defendant's misrepresentations and its concealment of and failure to disclose material information. Plaintiff and the Nationwide Class who were victims of the Data Breach would not have revealed their PII and PHI to their medical providers who use

Reventics if the true risks of Defendant's products and services had been disclosed. Plaintiff and the Nationwide Class also suffered the loss of their legally protected interest in the confidentiality and privacy of their PII and PHI, nominal damages, and additional losses as described above.

95.     Plaintiff and the Nationwide Class risk irreparable injury as a result of Defendant's acts and omissions in violation of the Colorado CPA, and these violations present a continuing risk to Plaintiff and the Nationwide Class, as well as to the general public, since victims have no way of knowing which medical providers are subjecting their PII and PHI to Defendant's inadequate data security. Defendant's unlawful acts and practices complained of herein affect the public interest.

96.     As a direct and proximate result of Defendant's violations of the Colorado CPA, Plaintiff and the Nationwide Class have suffered injury-in-fact and/or actual damages.

97.     Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiff, individually and on behalf of the Nationwide Class, seeks monetary relief against Defendant measured as the greater of (a) actual damages in an amount to be determined at trial and discretionary trebling of such damages, or (b) statutory damages.

98.     Plaintiff and the Nationwide Class also seek an order enjoining Defendant's unfair, unlawful, and/or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper relief available under the Colorado CPA.

### COUNT III
**Unjust Enrichment, in the Alternative**
**(By Plaintiff Individually and on Behalf of the Nationwide Class)**

99.     Plaintiff incorporates by reference all of the allegations contained in the preceding paragraphs of this Class Action Complaint as if fully set forth herein.

100.    Plaintiff and the Class Members conferred a monetary benefit upon Defendant in the form of their medical providers storing their PII and PHI with Defendant in such a way that saved expense and labor for Defendant.

101.    Defendant appreciated or had knowledge of the benefits conferred upon it by Plaintiff and the Class Members. Defendant also benefited from the receipt of Plaintiff and Class Members' PII and PHI, as this was used by Defendant to facilitate its core functions.

102.    The benefits given by Plaintiff and the Class Members, by way of their medical providers, were to be used by Defendant, in part, to pay for or recoup the administrative costs of reasonable data privacy and security practices and procedures.

103.    As a result of Defendant's conduct, Plaintiff and the Class Members suffered actual damages in an amount to be determined at trial.

104.    Under principles of equity and good conscience, Defendant should not be permitted to retain a benefit belonging to Plaintiff and the Class Members because Defendant failed to implement (or adequately implement) the data privacy and security practices and procedures that Defendant promised to Plaintiff and the Class Members that it would implement and/or was otherwise mandated by federal, state, and local laws and industry standards.

105.    Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiff and the Class Members all unlawful or inequitable proceeds or benefits it received as a result of the conduct alleged herein.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, requests that the Court:

A.   Certify this case as a class action on behalf of the Class defined above, appoint Plaintiff as the Class representative, and appoint the undersigned counsel as Class counsel;

B.   Award equitable and injunctive relief as is necessary to protect the interests of Plaintiff and the Class and to prohibit Defendant from engaging in the wrongful acts described herein;

C.   Award damages to Plaintiff and the Class in an amount to be determined at trial;

D.   Award Plaintiff and Class Members their reasonable litigation expenses and attorneys' fees to the extent allowed by law;

E.   Award Plaintiff and Class Members pre- and post-judgment interest, to the extent allowable; and

F.   Award such other and further relief as equity and justice may require.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

DATED: April 28, 2023                    Respectfully submitted,

By: */s/ Amber L. Schubert*
Robert C. Schubert
Amber L. Schubert
**SCHUBERT JONCKHEER & KOLBE LLP**
2001 Union Street, Suite 200
San Francisco, California 94123
Telephone: (415) 788-4220
Facsimile: (415) 788-0161
rschubert@sjk.law
aschubert@sjk.law

*Attorneys for Plaintiff Loeb and the Putative Class*